128 P.3d 87 (2006)
STATE of Washington, Respondent,
v.
Stoney Daye SHAFER, Appellant.
No. 75605-8.
Supreme Court of Washington, En Banc.
Argued June 30, 2005.
Decided February 9, 2006.
*88 Lenell Rae Nussbaum, Attorney at Law, Seattle, for Petitioner/Appellant.
Gerald Allen Horne, Kathleen Proctor, John Martin Neeb, Donna Yumiko Masumoto, Pierce Co. Prosc Atty Office, Tacoma, for Appellee/Respondent.
ALEXANDER, C.J.
¶ 1 Stoney Shafer was convicted of rape of a child in the first degree. At trial, certain statements that the alleged child victim made to her mother and another person were admitted pursuant to RCW 9A.44.120, notwithstanding the fact that the victim did not testify at the trial and Shafer had no prior opportunity to cross-examine the child. Shafer appeals, claiming that RCW 9A.44.120 facially or as applied, runs afoul of the constitutions of the United States and the State of Washington. We hold that the statements were properly admitted and affirm the trial court.

*89 I
¶ 2 On September 20, 2003, three-year-old T.C. spent a few hours at the home of her aunt Dionne Alston. Stoney Shafer, Alston's boyfriend, was present at Alston's home during T.C.'s visit to her aunt's home. At approximately 11:35 p.m. that night, T.C.'s mother retrieved T.C. from Alston's house and returned home with the child. T.C. was asleep when her mother collected her, and she slept until the next morning.
¶ 3 Shortly after T.C. awoke, she told her mother that "Uncle touched my privates."[1] Verbatim Report of Proceedings (May 5, 2004) at 312. T.C.'s mother then telephoned Dionne Alston and attempted to determine whether Shafer had spent any time alone with T.C. After this conversation, T.C.'s mother asked T.C. if she wanted to talk further. T.C. responded by telling her mother "that Uncle had touched her privates like this (gesturing)[2] and that Uncle licked her privates like this (indicating)."[3]Id. at 317. She also indicated that "Uncle had told her to kiss his privates like a sucker and that he made a mess on the bed with his pee-pee." Id. T.C.'s mother went on to describe their conversation:
After [T.C.] had got done telling me that, I just asked her "Uncle who?" to make sure that she was talking about who I thought she was talking about, and she said "Junior's dad."[4] And then I asked her where my sister was at. "Where was Auntie Dionne at?" She said "Auntie Dionne was in the yard," I believe, I think she said.
Id. T.C.'s mother indicated that T.C. had no previous exposure to sexually explicit material.
¶ 4 Following her conversation with T.C., T.C.'s mother took the child to a hospital for an examination. Washington State Patrol lab technicians later examined the swabs taken from T.C.'s vagina and mouth during the examination. They also examined clothing that the child was wearing at the time of the alleged sexual contact. Although the oral and vaginal swabs did not, according to the technicians, turn up any relevant evidence, semen was detected on the cuff of T.C.'s sleeve. Shafer was then arrested.
¶ 5 Approximately a week after Shafer's arrest, T.C. was at the home of Victoria Doroshenko, a family friend. Doroshenko had a history of acting as a confidential informant for law enforcement agencies. She was also aware that Shafer had been arrested for allegedly raping T.C. While there, T.C. talked to Doroshenko's daughter, Haley, about her encounter with Shafer. Haley relayed the information that she obtained from T.C. to Doroshenko. Doroshenko described the events that then took place:
After Haley told me this, I brought [T.C.] over and asked what they were talking about, and [T.C.] told me boys have pee-pees and girls have privates. And I said, "Well, what about them?" and she made a comment to it being "like a sucker," and, you know, making the gesture with her little cheek.
....
.... And she said, "But it tasted bad," or she said "But it tasted bad." "Yuck." Like that. And I said "Oh really?" and she said she said "Yeah, and then stuff shooted [sic] out of it." And I said, "Really? Well, then what happened?" and she said "Then it fall down."
Id. at 390.
¶ 6 Doroshenko then videotaped another interview with T.C. The record reveals that although Doroshenko had acted as a confidential informant for law enforcement organizations, she was not, at this time, acting for any law enforcement agency.
¶ 7 The Pierce County prosecuting attorney charged Shafer with one count of rape of a child in the first degree. Prior to trial, the *90 trial court conducted a competency hearing and concluded, based on the stipulation of the parties, that T.C. was not competent to testify. The trial court also concluded that because of her incompetence, T.C. was unavailable to testify.
¶ 8 Shafer moved to exclude T.C.'s hearsay statements, claiming that RCW 9A.44.120, the child hearsay statute, was unconstitutional in light of the United States Supreme Court's ruling in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The trial court denied the motion, ruling that the holding in Crawford applied to testimonial statements only and that to the extent that the statute permits the introduction of nontestimonial statements, it remained constitutional. It held that T.C.'s statements to her mother and Doroshenko were nontestimonial.
¶ 9 The trial court thereafter applied the so called "Ryan factors" to determine if T.C.'s statements were reliable for purposes of RCW 9A.44.120. See State v. Ryan, 103 Wash.2d 165, 175-76, 691 P.2d 197 (1984). Specifically, it found that:
[1] There is no apparent motive for T.C. to lie; [2] T.C. appears to be a "normal" child, one who does not have a negative character or any tendency to lie; [3] T.C. made statements about this incident to [her mother] and Ms. Doroshenko at different times, with similar content; [4] T.C.'s statements were spontaneous as defined by case law, in that she made the statements in her own words even when she was responding to a question; [5] T.C.'s statements to [her mother] were made the morning after the incident, and her statements to M[s]. Doroshenko were made within a week or so of the incident, so T.C. was still able to accurately recall what happened; [6] n/a; [7] n/a; [8] the possibility of T.C.'s recollection being faulty is remote because of the timing of those statements in relation to the incident; and [9] the overall circumstances surrounding the statements T.C. made to [her mother] and Ms. Doroshenko demonstrate reliability, especially considered in conjunction with the hand and mouth movements T.C. made and accepting the State's offer of proof that a semen stain was found on her shirt sleeve.
Clerk's Papers at 63. The trial court also found that T.C.'s hand and mouth gestures and the semen found on her shirt were "sufficient corroboration for the admission of T.C.'s statements" to her mother and Doroshenko. Id. Therefore, it concluded that T.C.'s statements to her mother and Doroshenko, with the exception of the videotaped questioning, were admissible.
¶ 10 At trial, Shafer stipulated that sperm was present on T.C.'s shirt and that it was his sperm. A jury found Shafer guilty. Shafer then petitioned this court for direct review and we granted his petition. Shafer has not assailed any of the trial court's findings of fact.

II
1. Whether RCW 9A.44.120, as applied in this case, is violative of the United States Constitution as interpreted by the United States Supreme Court in Crawford v. Washington.
2. Whether article I, section 22 of the Washington Constitution provides a greater right of confrontation than the sixth amendment to the United States Constitution and, if so, whether RCW 9A.44.120 violates that constitutional provision.

III
¶ 11 A statute is presumed to be constitutional. State v. Ward, 123 Wash.2d 488, 496, 869 P.2d 1062 (1994) (citing Diversified Inv. P'ship v. Dep't of Soc. & Health Servs., 113 Wash.2d 19, 23, 775 P.2d 947 (1989); State v. Brayman, 110 Wash.2d 183, 193, 751 P.2d 294 (1988)). The party challenging it, therefore, has the burden to prove it is unconstitutional beyond a reasonable doubt. Id.

A
¶ 12 Shafer contends that RCW 9A.44.120, as applied to him, is unconstitutional because it permitted the admission of T.C.'s hearsay statements by utilizing the "indicia of reliability" standard set forth in *91 Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), a standard, he argues, that was rejected in Crawford.
¶ 13 The confrontation clause of the Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. In 1980, the United States Supreme Court ruled that the admission of hearsay statements would not violate the confrontation right of the accused so long as the witness is unavailable and his or her statements bear adequate indicia of reliability. Roberts, 448 U.S. at 66, 100 S.Ct. 2531. The Washington State Legislature enacted RCW 9A.44.120[5] in response to Roberts. See LAWS OF 1982, ch. 129, § 2.
¶ 14 In 2004, the United States Supreme Court reexamined its decision in Roberts and departed from it, holding that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68, 124 S.Ct. 1354 (emphasis added). It indicated further, however, that where nontestimonial statements are at issue, "it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay lawas does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Id. Thus, it follows that not all hearsay implicates the confrontation clause. Indeed, we so concluded in State v. Davis, 154 Wash.2d 291, 111 P.3d 844 (2005), a case in which we examined statements made during a 911 call in which a victim identified the defendant as her assailant. We said there that those statements were nontestimonial and, consequently, did not implicate Crawford. Id. at 305, ¶ 38, 111 P.3d 844.
¶ 15 We must, therefore, determine here if T.C.'s statements to her mother and Doroshenko were "testimonial." As we observed in Davis, the United States Supreme Court did not pronounce a comprehensive definition of testimonial in Crawford. Id. at 299, ¶ 18, 111 P.3d 844. It did indicate, however, that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." Crawford, 541 U.S. at 68, 124 S.Ct. 1354.[6] Of the testimonial statements identified as such in Crawford, the common thread binding them together was some degree of involvement by a government official, whether that person was acting as a police officer, as a justice of the peace, or as an instrument of the court. Accord id. at 53, *92 124 S.Ct. 1354 The court in Crawford went on to say that casual remarks made to family, friends, and nongovernment agents are generally not testimonial statements because they were not made in contemplation of bearing formal witness against the accused. Id. at 51, 124 S.Ct. 1354; accord Davis, 154 Wash.2d at 304, 111 P.3d 844.[7]
¶ 16 In light of the Supreme Court's formulations of what is or is not "testimonial," we first examine the statements T.C. made to her mother. These statements were not solicited by T.C.'s mother. Without prompting, T.C. told her mother about her encounter with Shafer, and she did so upon awaking from sleep. T.C.'s mother then responded in a manner that one would expect of a concerned parent under the circumstancesshe inquired further. While T.C.'s statements in response to her mother's questioning were not entirely spontaneous, they were not the result of leading questions or a structured interrogation. Furthermore, the police were not involved, and T.C. had no reason to expect that her statements would be used at a trial.[8] For these reasons, we conclude that T.C.'s statements to her mother were nontestimonial and, thus, do not run afoul of Crawford.
¶ 17 It is a closer question whether the statements T.C. made to Doroshenko were testimonial. On the one hand, Doroshenko had prior experience as an informant for law enforcement agencies, and her contact with T.C. occurred approximately a week after Shafer was arrested. On the other hand, Doroshenko was not acting for any law enforcement agency at the time she talked to T.C. and, again, T.C. had no reason to expect that her statements would later be used in court. Furthermore, the most questionable aspect of Doroshenko's contact with T.C., the videotaped interview of the child, was excluded from evidence by the trial court. On balance, we are of the view that T.C.'s nonvideotaped statements to Doroshenko were not testimonial.
¶ 18 In light of the foregoing, we conclude that, where nontestimonial hearsay statements of a child are at issue, the statements are admissible if there is compliance with RCW 9A.44.120 and the Ryan reliability factors. Because Shafer has not challenged any of the trial court's findings of fact in support of its conclusion that T.C. was unavailable and that her statements were reliable, the findings are considered verities on appeal. State v. Rankin, 151 Wash.2d 689, 709, 92 P.3d 202 (2004) (citing State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994)). Therefore, the admission of these nontestimonial statements does not violate the United States Constitution.

*93 B
¶ 19 Shafer contends, additionally, that the confrontation clause contained in article I, section 22 of the Washington Constitution is to be interpreted more broadly than its federal counterpart in the Sixth Amendment and that RCW 9A.44.120 violates this broad interpretation.
¶ 20 Article I, section 22 of the Washington Constitution provides, in pertinent part: "In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face." In State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998), we addressed the issue of whether a statute that allowed a child witness to testify via one-way closed circuit television ran afoul of the "`face to face'" language in article I, section 22. Id. at 444, 957 P.2d 712. Although our court was divided in Foster, a majority of the court concluded that article I, section 22 required an independent analysis and that the statute did not violate our state's constitutional provision. Id. at 470, 957 P.2d 712 (Guy, J., lead opinion); id. at 474, 957 P.2d 712 (Alexander, J., concurring and dissenting); id. at 481, 957 P.2d 712 (C. Johnson, J., dissenting).
¶ 21 While Shafer correctly observes that an independent analysis of article I, section 22 is required, we need not engage in such analysis here. We say this because we have previously concluded that RCW 9A.44.120 complies with article I, section 22. Ryan, 103 Wash.2d at 169-70, 691 P.2d 197. In Ryan, we were asked to determine whether RCW 9A.44.120 violated the Sixth Amendment and article I, section 22. We held there that "[t]he requirements for admission under RCW 9A.44.120 comport with the general approach utilized to test hearsay against confrontation guaranties." Id. at 170, 691 P.2d 197. We adhere to that view now and hold that RCW 9A.44.120 is constitutional under article I, section 22.

IV
¶ 22 We conclude that RCW 9A.44.120 is constitutional to the extent it permits the admission of a child's nontestimonial statements. We also conclude that RCW 9A.44.120 was applied constitutionally in this case because the child's statements were nontestimonial. We, therefore, affirm the trial court.
C. JOHNSON, MADSEN, OWENS, FAIRHURST and BRIDGE, JJ. concur.
CHAMBERS, J. (concurring).
¶ 23 The text of Washington's confrontation clause, article I, section 22, is strikingly different from its federal Sixth Amendment counterpart. Under our state constitution, the "accused shall have the right ... to meet the witnesses against him face to face." CONST. art. I, § 22. By contrast, under the federal constitution, the accused enjoys the more limited right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. It is my view that in the appropriate circumstances, our constitution may provide greater protection than the Sixth Amendment. But because I read the majority's result in this case to be consistent with my view, I concur.
¶ 24 As the majority correctly observes, a majority of the divided court in State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998), concluded that article I, section 22 of the Washington State Constitution requires independent analysis. Majority at 92-93. Indeed the markedly different text alone (only one of the Gunwall factors), perhaps the most important factor, strongly supports a conclusion that Washington's confrontation clause provides greater protections. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
¶ 25 I am also reluctant to rely upon State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984), for any independent interpretation of article I, section 22. Contra majority at 93. Ryan was decided before our decision in Gunwall. When interpreting article I, section 22, the Ryan court found the section to be synonymousnot differentfrom the Sixth Amendment. Ryan, 103 Wash.2d at 169, 691 P.2d 197. I do not believe that, post-Gunwall, this is sustainable.
¶ 26 However, as the majority of this court in Foster observed, "face to face" and "confront" are consonant terms. My review *94 of dictionaries and pertinent cases leads me to conclude that the phrases "meet the witnesses against him face to face" and "to be confronted with the witnesses against him" meant one and the same to our founders. See Foster, 135 Wash.2d at 459, 957 P.2d 712 (citing WILLIAM C. ANDERSON, A DICTIONARY OF LAW 226 (1889) (defining the word "`confront'" as to "`bring face to face'") and (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 477, 811 (1986) (defining "`confront'" to mean to "`bring face to face'"; defining "`face'" to mean to "`confront'"))). Be that as it may, the passage of time and pen seems to have changed the interpretation of the terms used by the federal courts. Compare Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) with Crawford v. Washington, 541 U.S. 36, 63, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (overruling Roberts). We should hew to the original understanding and jealously guard what the constitution promises.
¶ 27 I also agree with the majority today that the admission of the testimony of Victoria Doroshenko is a close question. Majority at 92. I part company with the majority in its heavy reliance on the fact that Doroshenko was not a law enforcement officer. The fact that a statement is given to a government official is only one factor to be considered when determining whether evidence is "testimonial" for the purposes of the Sixth Amendment confrontation clause, albeit an important one. Crawford, 541 U.S. at 51-54, 124 S.Ct. 1354.
¶ 28 Because I believe what is and is not testimonial under Crawford will be a thorny and difficult issue for trial judges, I offer my own observations. First, while Crawford declines to articulate a comprehensive definition of "testimonial," it did provide several examples of what the core class of testimonial statements might be, including:
[1] ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements ... contained in formalized testimonial material, such as affidavit, depositions, prior testimony, or confessions; [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for the use at a later trial.
Id. at 51-52, 124 S.Ct. 1354 (citations omitted) (internal quotations marks omitted).
¶ 29 The last category, statements made under circumstances that would lead an objective witness to believe the statements would be available for use later at trial, will be the most difficult. Obviously the Crawford court intended an "objective" test with respect to whether or not a statement would be available for use at trial at a later time. Objectively, I would conclude the statements made to Doroshenko were testimonial. While Doroshenko was not a law enforcement officer, she was also not merely a friend of the family. She testified that she had over 10 years' experience as a volunteer investigator and confidential informant for the Federal Bureau of Investigation, United States Secret Service, Sumner Police Department, Tacoma Police Department, and various drug and gang task forces. Doroshenko's first interview with T.C. took place approximately one week after Shafer had been arrested, and Doroshenko was aware that Shafer had been arrested and suspected of raping T.C. Doroshenko solicited statements from T.C. rather than T.C. making statements spontaneously. While the fact Doroshenko was a family friend tends to weigh in the opposite direction, in my view, an objective witness would understand from the totality of the circumstances that T.C.'s statements made to Doroshenko would be used at trial.
¶ 30 Second, we should apply an abuse of discretion standard to the admission or nonadmission of such statements, since whether or not they are testimonial is essentially a factual determination. E.g., State v. Davis, 154 Wash.2d 291, 301, 111 P.3d 844, cert. granted, ___ U.S. ___, 126 S.Ct. 547, 163 L.Ed.2d 458 (2005). In short, the trial court would not abuse its discretion in either admitting or excluding Doroshenko's testimony.
*95 ¶ 31 Finally, regardless of whether or not the admission of Doroshenko's testimony was error, even confrontation clause violations should be subject to harmless error analysis. If the untainted evidence admitted is so overwhelming as to necessarily lead to a finding of guilt, there is no error. State v. Palomo, 113 Wash.2d 789, 799, 783 P.2d 575 (1989). Here the properly admitted hearsay statements T.C. made to her mother describing the sexual contact she had with Shafer, the evidence of Shafer's semen found on T.C.'s clothing, and T.C.'s explicit mouth gestures constitute overwhelmingly untainted evidence of guilt. Therefore, I too would affirm Shafer's conviction and leave for another day when article I, section 22 provides greater protection than the Sixth Amendment.
J.M. JOHNSON, J., concurs.
SANDERS, J. (dissenting).
¶ 32 The confrontation clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.[1] As a consequence, hearsay evidence of a testimonial statement is inadmissible in a criminal trial, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The majority holds that T.C.'s allegations of sexual assault were nontestimonial statements and that admission of hearsay evidence of those allegations did not violate the confrontation clause. I disagree.

I. T.C.'S STATEMENTS WERE TESTIMONIAL BECAUSE A REASONABLE PERSON WOULD EXPECT THE STATE TO USE THEM IN AN INVESTIGATION OR PROSECUTION
¶ 33 Whether or not a particular statement is testimonial is indeed a fact-specific question courts must answer on a case-by-case basis. See State v. Davis, 154 Wash.2d 291, 295, 111 P.3d 844, cert. granted, ___ U.S. ___, 126 S.Ct. 547, 163 L.Ed.2d 458 (2005). The police didn't solicit T.C.'s statements. And she certainly didn't have any expectations concerning their use. Majority at 91-92. Both are relevant facts. But neither is dispositive. The majority incorrectly assumes that the question at issue is whether the speaker knew the police would use the statement. In fact, it is whether a reasonable person would expect the police to use the statement. See Commonwealth v. Gonsalves, 445 Mass. 1, 833 N.E.2d 549, 557 (2005); United States v. Brito, 427 F.3d 53 (1st Cir.2005). And whether or not T.C. expected the police to use her statements, a reasonable person certainly would.

A. Statements Made to Nongovernment Agents May Be Testimonial
¶ 34 Statements made to the police are indeed generally testimonial. Crawford specifies that the term testimonial "applies at a minimum" to statements made to government agents. Crawford, 541 U.S. at 68, 124 S.Ct. 1354 (emphasis added). A statement "knowingly given in response to structured police questioning" is testimonial under "any conceivable definition." Id. at 53 n. 4, 124 S.Ct. 1354. See also Davis, 154 Wash.2d at 301, 111 P.3d 844 (finding testimonial 911 calls "generated by a desire to bear witness"); State v. Walker, 129 Wash.App. 258, 261, 118 P.3d 935 (2005) (finding testimonial any statement "elicited in response to structured police questioning in the course of a police investigation").
¶ 35 But a statement made to a private individual may also be testimonial. In re E.H., 355 Ill.App.3d 564, 823 N.E.2d 1029, 1037, 291 Ill.Dec. 443 (holding "it is the nature of the testimony rather than the official or unofficial nature of the person testifying that determines the applicability of Crawford and the confrontation clause"), appeal granted, *96 215 Ill.2d 597, 833 N.E.2d 2, 295 Ill.Dec. 520 (2005). Cf. Bruton v. United States, 391 U.S. 123, 138, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (Stewart, J., concurring) ("[A]n out-of-court accusation is universally conceded to be constitutionally inadmissible against the accused."); California v. Green, 399 U.S. 149, 179, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring) ("[T]he Confrontation Clause was meant to constitutionalize a barrier against ... absentee witnesses."). "`A statement made by a person claiming to be the victim of a crime and describing the crime is usually testimonial, whether made to the authorities or not.'" Richard D. Friedman & Bridget McCormack, Dial-In Testimony, 150 U. PA. L. REV. 1171, 1241 n.276 (2002) (quoting Richard D. Friedman, Confrontation: The Search for Basic Principles, 86 Geo. L.J. 1011, 1042-43 (1998)). See also Richard D. Friedman, Grappling with the Meaning of "Testimonial", 71 BROOK. L. REV. 241, 260 (2005) ("If the declarant anticipates that the statement, or the information asserted in it, will be conveyed to the authorities and used in prosecution, then it is testimonial, whether it is made directly to the authorities or not."). Specifically, a "parent, teacher or doctor who suspects child abuse and questions the child for the purpose of confirming her suspicions is in fact seeking `testimonial' statements." Robert A. Aronson, THE LAW OF EVIDENCE IN WASHINGTON § 804.04[1][c], at 804-29 (2005). So T.C.'s statements to her mother may well be testimonial.

B. Crawford Requires an Objective Test
¶ 36 An interpretation of "testimonial" focusing on the intent of the declarant "is unduly narrow, does not fully comport with the thrust of Crawford, is inconsistent with the trend in other jurisdictions, and is more difficult to apply than the approach adopted in other jurisdictions." Aronson, supra, § 804.04[1][c], at 804-23. Rather, a statement is testimonial if it provides "the functional equivalent of uncross-examined, in-court testimony." Davis, 154 Wash.2d at 301, 111 P.3d 844. See also Friedman, Grappling with the Meaning of "Testimonial," supra, at 249 (suggesting statement testimonial if it "performs the function of testimony"). So, the appropriate inquiry is whether a statement serves the function of testimony. And a statement can function as testimony whether or not the speaker actually expects the State to use it. See In re E.H., 291 Ill.Dec. 443, 823 N.E.2d at 1037 (holding "the declarant's state of mind is hardly a consideration when determining whether there has been a confrontation violation"). The actual intentions of the person who made the statement are irrelevant.
¶ 37 Thus, as I emphasized in Davis, the logic of Crawford demands "an objective evaluation of whether a reasonable person would know that his statements could be used to prosecute." Davis, 154 Wash.2d at 307, 111 P.3d 844 (Sanders, J., dissenting). See also Chris Hutton, Sir Walter Raleigh Revived: The Supreme Court Re-Vamps Two Decades of Confrontation Clause Precedent in Crawford v. Washington, 50 S.D. L. REV. 41, 71 (2005) (noting "the subjective standard has been overwhelmed by the objective standard"). Crawford didn't "spell out a comprehensive definition of `testimonial,'" 541 U.S. at 68, 124 S.Ct. 1354. But it did offer several helpful "formulations" of the "core class of `testimonial' statements." Id. at 51, 124 S.Ct. 1354. These include "`pretrial statements that declarants would reasonably expect to be used prosecutorially'" and "`statements that were made under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial.'" Id. at 51-52, 124 S.Ct. 1354 (emphasis added) (quoting briefs).
¶ 38 This languagereasonable, objectiveinescapably implies that objective criteria distinguish testimonial and nontestimonial statements. "The proper inquiry is whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." Gonsalves, 833 N.E.2d at 558. See also Brito, 427 F.3d at 61 ("The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated ... would have had the capacity to appreciate the legal ramifications of her statement."); Horton v. Allen, 370 F.3d 75, 84 (1st Cir.2004) (finding statement nontestimonial because not made "under circumstances *97 in which an objective person would `reasonably believe that the statement would be available for use at a later trial'" (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354)); United States v. Cromer, 389 F.3d 662, 675 (6th Cir.2004) (holding statement testimonial if "a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime"); People v. Cortes, 4 Misc.3d 575, 594, 781 N.Y.S.2d 401 (2004) (holding statement testimonial if reasonable person would know it "is likely to be used in investigation or prosecution of a crime"); People v. Sisavath, 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753, 758 n. 3 (2004) ("[I]f the statement was given under circumstances in which its use in a prosecution is reasonably foreseeable by an objective observer, then the statement is testimonial."). See also Friedman, Grappling with the Meaning of "Testimonial", supra, at 4 (suggesting "statement is testimonial if it transmits information for use in litigation"). And a "reasonable person" expects the police to use an allegation of sexual assault.
¶ 39 Apparently, the majority is unfamiliar with the vagaries of the apocryphal "reasonable person." It actually concedes that a statement is testimonial if "a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting the alleged crime." Majority at 92. But inexplicably, it proceeds to premise its conclusions on the expectations of a "reasonable three-year-old child." Id. And of course, a "reasonable person" cannot have the subjective expectations of a three-year-old child." Certainly, the "circumstances" surrounding a statement are relevant. But they cannot include the competence of the speaker. An "objective" test that considers subjective characteristics is no objective test at all.

C. Under an Objective Test T.C.'s Statements were Clearly Testimonial
¶ 40 Essentially, the majority holds that the State can use hearsay evidence of T.C.'s statements as testimony because she cannot testify herself. But hearsay evidence of an out-of-court statement is simply a "`weaker substitute for live testimony.'" State v. Rohrich, 132 Wash.2d 472, 480, 939 P.2d 697 (1997) (quoting United States v. Inadi, 475 U.S. 387, 394, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). The confrontation clause prohibits the introduction of hearsay evidence of a child's out-of-court statement after the child testifies. Rohrich, 132 Wash.2d 472, 939 P.2d 697. Perversely, the majority permits it when the child never testifies at all. T.C. said out-of-court exactly what the State would expect her to say on the stand. And if a statement is testimonial in court, it's testimonial at home, too. Cf. Friedman & McCormack, 150 U. PA. L. REV., supra, at 1242 (suggesting "if any significant time has passed since the events it describes, the statement is probably testimonial").
¶ 41 Obviously, an incompetent child witness like T.C. can't herself form subjective expectations regarding the future use of her statements. But the "intent of the declarant" cannot determine whether a statement is testimonial because "the Confrontation Clause was intended to protect the defendant's right to cross-examine witnesses whose statements may lead to his conviction." Aronson, supra, § 804.04[1][c], at 804-24. So we must evaluate her statements from an objective perspective. They are testimonial if a reasonable, competent person in a similar position would expect the State to use them in investigating or prosecuting a crime. See Hutton, 50 S.D. L. REV., supra, at 70 (noting that in child witness cases, "courts focus on whether an objective witness would view the statements as designed for prosecutorial purposes"). Such a statement is objectively testimonial because the State could use it in place of testimony.
¶ 42 While a statement "generated by a desire to bear witness" is testimonial, a "call for help to be rescued from peril" is not. Davis, 154 Wash.2d at 301, 111 P.3d 844. But how to distinguish one from another? The answer is elementary. "Any assertion, taken as the basis of an inference to the existence of the matter asserted, is testimony, whether made in court or not." 2 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 479, at 640 (James H. Chadbourn rev. ed., 1979), quoted *98 in In re E.H., 291 Ill.Dec. 443, 823 N.E.2d at 1036. Thus, a statement "offered to prove the truth of the matter asserted" is testimonial. In re E.H., 291 Ill.Dec. 443, 823 N.E.2d at 1036. Cf. Dutton v. Evans, 400 U.S. 74, 88, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). And a statement "used to prove merely that the statement had been made" is not. Dutton, 400 U.S. at 88, 91 S.Ct. 210. But the State did not offer hearsay evidence of T.C.'s statements merely to prove she made them. It offered hearsay evidence of those statements as proof of what they asserted, intending them to implicate Shafer. Consequently, the statements were clearly testimonial.
¶ 43 Of course, some casual, incidental statements are nontestimonial. See Crawford, 541 U.S. at 51, 124 S.Ct. 1354. A reasonable, competent person expects a statement to "be available for use at a later trial" only if there's reason to believe it concerns a criminal violation. And a seemingly innocuous statement may ultimately prove relevant to a criminal charge. But an allegation of sexual assault is never "a casual remark to an acquaintance" or an "off-hand, overheard remark." Id. at 51, 124 S.Ct. 1354. It simply beggars belief to suggest that a reasonable, competent person would not expect the police to use an allegation of sexual assault in investigating and prosecuting a crime.
¶ 44 A crime report is a testimonial statement, but an "excited utterance ... `made without reflection or deliberation'" is not. Davis, 154 Wash.2d at 301, 111 P.3d 844 (quoting People v. Corella, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770, 776 (2004)). But T.C. wasn't in danger when she made the statements to her mother and Doroshenko. She didn't make an "excited utterance." She reported an alleged crime as best she was able, by telling her mother it took place. See Friedman, Grappling with the Meaning of "Testimonial", supra, at 21 (noting that "narrative statements by victims of completed crimes almost certainly are made with anticipation of prosecutorial use"). T.C. may not have understood the gravity of her statements. But a reasonable, competent person in her position certainly would. Her allegations of sexual assault were testimonial because a reasonable person would expect them to function as testimony. Therefore, the court should not have admitted hearsay evidence of them.
¶ 45 Consequently, I dissent.
NOTES
[1] According to T.C.'s mother, T.C. used the term "uncle" to refer to Shafer and the term "privates" in reference to her vaginal area.
[2] T.C.'s mother testified that the child's gesture was to "put her index finger up and made ... kind of a circular motion with her finger." Id. at 318.
[3] T.C.'s mother described the child's indication as "sticking her tongue in and out of her mouth." Id.
[4] Shafer and Alston are the parents of Stoney Daye Shafer, Jr., also known as "Junior."
[5] RCW 9A.44.120 conditions the admission of hearsay statements made by children under the age of 10 describing any act of sexual contact performed with or on them by another on the following:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
"(2) The child either:
"(a) Testifies at the proceedings; or
"(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."
[6] The concurring opinion correctly observes that what is or is not testimonial in light of Crawford will present a challenging determination for this State's trial court judges. This is due in part to the United States Supreme Court's decision to not provide a precise definition of testimonial statements. The Supreme Court did, however, articulate three formulations of the core class of testimonial statements. These are: "`[(1)]ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, [(2)] `extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [and (3)] `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354 (citations omitted). We find ourselves agreeing with the late Chief Justice William H. Rehnquist that what constitutes a testimonial statement is presently somewhat amorphous. Id. at 75-76, 124 S.Ct. 1354 (Rehnquist, C.J., concurring). We are satisfied, however, that T.C.'s statements do not fall within any one of the Supreme Court's three core class formulations.
[7] In Crawford, the Supreme Court identified several types of statements it considered nontestimonial, such as: (1) off-hand, overheard remarks, (2) casual remarks made to an acquaintance, (3) business records or statements in furtherance of a conspiracy, (4) dying declarations, and (5) statements made unwittingly to a government informant. Crawford, 541 U.S. at 51, 56, 57, 124 S.Ct. 1354.
[8] The dissenting opinion states that we are using a subjective person, rather than an objective person, test to determine whether the declarant, T.C., reasonably believed the challenged statements would be used later to prosecute. Dissent at 96-97. The proper test to be applied in determining whether the declarant intended to bear testimony against the accused is whether a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting the alleged crime. The inquiry focuses on the declarant's intent by evaluating the specific circumstances in which the out-of-court statement was made. See Commonwealth v. Gonsalves, 445 Mass. 1, 833 N.E.2d 549, 562 (2005) ("We see no reason why a reasonable person in the [20-year-old] complainant's position would anticipate that her statement, made in her own bedroom, to her mother ... would be used [in] prosecuting the alleged assault."). Applying this standard, it defies logic to think that T.C., as a three-year-old child, or any reasonable three-year-old child, would have an expectation that her statements about alleged sexual abuse could be used for prosecutorial purposes. Thus, whether one looks to T.C.'s subjective appreciation of the legal ramifications of her statements, as the dissent incorrectly asserts we do, or whether one objectively looks to what a reasonable, competent person in T.C.'s position would understand to be the import of the statements, which is the proper determination, the outcome of this case would not change. A three-year-old child, whether T.C. or a fictional reasonable one, who tells her mother and a family friend in a private setting about sexual abuse is not making the statements in anticipation that the statements will later be used to prosecute the alleged sexual abuse perpetrator.
[1] An analogous provision in the Washington Constitution guarantees a criminal defendant "the right ... to meet the witnesses against him face to face...." WASH. CONST. art. I, § 22. I agree with the concurrence that this provision may supplement the protections offered by the confrontation clause. However, because I believe that hearsay evidence of T.C. statements is inadmissible under the confrontation clause, I do not reach the question of whether certain nontestimonial statements admissible under the confrontation clause are inadmissible under the Washington Constitution.