FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 19

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

JOSEPH ANDREW LESTER,

Appellant.

No. 44633-2-II

UNPUBLISHED OPINION

SUTTON, J. — Joseph Andrew Lester appeals his jury conviction for second degree murder. He argues that (1) the trial court violated his Sixth Amendment right to confront witnesses, (2) the trial court abused its discretion by admitting hearsay evidence under the penal interest exception, and (3) his counsel was ineffective by failing to propose a jury instruction that placed the burden on the State to disprove his diminished capacity defense. We hold that (1) the trial court did not violate Lester's Sixth Amendment right; (2) the trial court erred in admitting the entirety of one of Keisha Lewis's statements and not redacting the self-serving portion of that statement, but the error was harmless; and (3) Lester's trial counsel was not ineffective. We affirm.

## FACTS

### I. OCTOBER 9 AND OCTOBER 31 STABBINGS

Lester and Lewis began a romantic relationship in early 2010. Their daughter was born in December 2010.[1] On October 31, 2011, Lester stabbed and killed Lewis, who was 10 weeks pregnant.

---

[1] Lewis also had a two-year-old son from a previous relationship.

No. 44633-2-II

On October 9, about three weeks before she died, Lewis stabbed Lester's leg. Police photographs of the scene showed blood throughout the apartment and officers believed that the apartment had been "staged." 7 Verbatim Report of Proceedings (VRP) at 519. Both Lester and Lewis lied to investigating officers about who stabbed Lester, telling the officers that a fictional person named Marcus had done the stabbing. The police suspected that Lewis had stabbed Lester but, because Lester did not wish to pursue charges, they did not investigate the incident further. The day following the first stabbing incident, Lewis talked to her friend, Latasha Taylor. Taylor testified at trial that she had asked Lewis if Lester would be alright and then continued:

> [TAYLOR:] I asked her where he got stabbed, and she was like in his leg. And then I was, like, why did you do it, and she told me why she did it.
> [STATE:] Did she tell you that the two of them got into a physical altercation?
> [TAYLOR:] Yes.
> [STATE:] Did she describe how she stabbed him?
> [TAYLOR:] She just said that he was choking her, and she grabbed the knife, and she stabbed him to get him off of her.

5 VRP at 221.

After the first stabbing incident, Sandra Barnes, Lewis's mother,[2] told Lester to move out of Barnes's home where Lester had been living with Lewis, their daughter, and Lewis's two-year-old son. Three days before Lewis's death, Lester, Lewis, and the two children moved out of Barnes's home. The day after the move, Lewis asked Barnes if she could "come home" because she was afraid that Lester was "going to hurt her." 5 VRP at 185. Barnes allowed Lewis and Lewis's son to move back into her home.

---

[2] Barnes is Lewis's aunt but raised Lewis since she was 22 day old so we refer to Barnes as Lewis's mother. We intend no disrespect.

2

On October 31, Lester came to Barnes's home with his and Lewis's daughter. Taylor was visiting Lewis at Barnes's home that day. Lester and Lewis walked outside together and Lester brought their daughter with him. Neither Taylor nor Barnes saw Lewis carry a knife outside. About five minutes later, Lewis began screaming, "He's killing me!" and ran inside where she died quickly thereafter. 5 VRP at 199. A neighbor standing across the street heard Lewis's cries and met Lester's gaze; Lester said, "I'm just doing to her what she was doing to me." 5 VRP at 275-76. The neighbor testified that Lester appeared calm and not panicked while the neighbor watched Lester place his daughter in the backseat of the car.

Lewis sustained nine injuries and stabbings. Two of those stabbings could have been fatal by themselves. Some of Lewis's injuries could have been caused by defending herself. Although Lester recalled wrestling for the knife on the ground, he acknowledged that the clothing he wore that day lacked stains or blood on them, and that he did not have scratches, stab wounds, or incisions on his body.

The State charged Lester with two counts of murder, first and second degree, and alleged a deadly weapon enhancement and three aggravators due to Lewis's pregnancy, domestic violence, and the crime occurring within the presence of a minor child.

## II. TRIAL

At trial, the State moved to admit two statements previously made by Lewis: (1) her statement to Taylor that she stabbed Lester on October 9 because Lester was choking her; and (2) her statement to Barnes, a few days prior to her death, that she was afraid of Lester. Lester objected based on his Sixth Amendment[3] right to confront witnesses, although he conceded that Lewis's

---

[3] U.S. CONST. amend. VI

statement to Taylor was not testimonial. The trial court conducted a balancing test and determined that the statements would benefit both parties and admitted the statements under ER 404(b) and 804(b)(3).[4] Lester did not request a limiting instruction.

Lester claimed he acted reasonably in self-defense in light of the first stabbing incident by Lewis. He also claimed to have diminished capacity as a result of post-traumatic stress disorder (PTSD), which meant he was unable to act with intent to murder Lewis when he stabbed her. The defense expert psychologist, Dr. Vincent Gollogly, testified that Lester suffered from PTSD, which explained why he experienced a blackout during the stabbing incident and could not remember what had happened except for a flashback where he recalled wrestling on the ground for a knife. Gollogly opined that Lester did not intentionally stab Lewis when he reacted under panic as Lewis rushed at him with a knife. The State's rebuttal expert testified that Lester did not suffer from PTSD and he had the capacity to form the mental state of intent.

Lester's counsel proposed and the trial court agreed to instruct the jury on diminished capacity as follows: "Evidence of mental illness or disorder may be taken into consideration in determining whether the defendant had the capacity to formulate premeditation or specific intent to kill." Clerk's Papers (CP) at 309, 363. Lester's proposed instruction cited 11 *Washington Pattern Instruction: Criminal* (WPIC) 18.20.

The jury found Lester guilty of second degree murder.[5] Lester appeals.

---

[4] To admit evidence under ER 404(b), the trial court must conduct a balancing test by weighing the evidence's probative value against its prejudicial effect. *In re Det. of Coe*, 175 Wn.2d 482, 493, 286 P.3d 29 (2012). Lester does not challenge the trial court's ER 404(b) ruling.

[5] The jury also returned special verdicts finding the deadly weapon enhancement and the aggravating factors.

4

ANALYSIS

I. CONFRONTATION CLAUSE

Lester argues that the trial court violated his Sixth Amendment right to confront witnesses by admitting Lewis's statements to Barnes that she was afraid of Lester and to Taylor that she stabbed Lester because he was choking her. We disagree. Because neither of Lewis's statements to her mother and her friend were testimonial, we hold that Lester's Sixth Amendment right was not violated.

A. Standard of Review

The Sixth Amendment's confrontation clause guarantees a criminal defendant's right to "be confronted with the witnesses against him." U.S. CONST. amend. VI. We review confrontation clause rulings de novo. *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). The confrontation clause applies only to testimonial statements or materials. *State v. Beadle*, 173 Wn.2d 97, 112, 265 P.3d 863 (2011). Admission of hearsay statements by an unavailable declarant may violate that right if the statements are testimonial and the defendant has not had an opportunity to cross-examine the declarant. *State v. Shafer*, 156 Wn.2d 381, 388, 128 P.3d 87 (2006), *cert. denied*, 549 U.S. 1019 (2006). The State bears the burden of proving that a statement is nontestimonial. *Koslowski*, 166 Wn.2d at 417 n.3.

When a declarant makes a statement to a nongovernmental witness, we use the declarant-centric standard to analyze whether the statement is testimonial. *Shafer*, 156 Wn.2d at 390 n.8. That standard asks if a reasonable person would believe that the State would use the statement against the defendant in prosecuting the alleged crime. *Shafer*, 156 Wn.2d at 390 n.8. This inquiry

"focuses on the declarant's intent by evaluating the specific circumstances in which the out-of-court statement was made." *Shafer*, 156 Wn.2d at 390 n.8.

### B. The Trial Court Did Not Violate Lester's Sixth Amendment Right

Lewis made the statements at issue to her mother and her friend, both nongovernmental witnesses. The record contains no evidence that Lewis believed that her statements to Barnes and Taylor would be used to prosecute Lester. Lewis called Barnes for permission to move back home. Lewis's conversation with Taylor about the first stabbing incident occurred in the context of a friend asking what had happened to Lester to cause his injuries. A reasonable person in Lewis's position would not believe that either of those statements would be used to prosecute Lester. Further, trial counsel conceded that the statement to Taylor was not testimonial.[6] Accordingly, we hold that the trial court did not violate Lester's Sixth Amendment right.

### II. ADMISSION OF HEARSAY EVIDENCE AS A STATEMENT AGAINST PENAL INTEREST

Lester also argues that the trial court erred by admitting Lewis's statement to Taylor that she stabbed Lester on October 9 because he was choking her. We agree. Although Lewis's statement that she stabbed Lester was admissible under ER 803(b)(3) as contrary to Lewis's penal interest, the reason she stabbed him was not against her penal interest and that portion of Lewis's statement should have been excluded.

---

[6] And Lester's argument that the State's use of these statements "without limitation" converted them into testimonial statements is also incorrect: Br. of Appellant at 11. The trial court evaluated this evidence under ER 404(b) and conducted a proper balancing of the probative value against the undue prejudice. Lester did not request a limiting instruction. Both sides used these statements to fit their respective trial theories.

## A. Legal Principles

We review evidentiary rulings for abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). A trial court abuses its discretion if the ruling was manifestly unreasonable or based upon untenable grounds or reasons. *Garcia*, 179 Wn.2d at 846.

Hearsay evidence of an unavailable declarant is admissible if the statement was so contradictory to the declarant's penal interest or subjected the declarant to criminal liability that no reasonable person in the declarant's position would have made the statement unless he or she believed it to be true.[7] ER 804(b)(3). A statement that is against a person's penal interest is one that "in a real and tangible way [subjects the declarant] to criminal liability." *State v. Gee*, 52 Wn. App. 357, 362, 760 P.2d 361 (1988). A statement is sufficiently contrary to penal interest if, even though it is not a "clear and unequivocal admission of criminal conduct," it would have probative value in prosecuting the declarant. *State v. Parris*, 98 Wn.2d 140, 149, 654 P.2d 77 (1982).

If a statement contains both self-serving and inculpatory portions, it is error to admit the entire statement. *State v. Roberts*, 142 Wn.2d 471, 493-94, 14 P.3d 713 (2000). Our Supreme Court in *Roberts* endorsed the rule in *Williamson v. United States*,[8] directing trial courts to separate the self-serving portions of a statement against penal interest from the inculpatory portions and to admit only the inculpatory portions under ER 804(b)(3). *Roberts*, 142 Wn.2d at 494, 498-99.

---

[7] In a criminal case, the trial court must also find that "corroborating circumstances clearly indicate" that the statement is trustworthy before it admits the evidence. ER 804(b)(3). Because we hold that the trial court abused its discretion by not excluding the self-serving portion of Lewis's statement to Taylor, we do not address Lester's argument that the trial court abused its discretion because it did not analyze the statement's trustworthiness.

[8] *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994).

B. The Trial Court Erred By Admitting Lewis's Entire Statement To Taylor

Here, Lewis's statement to Taylor contained both inculpatory and self-serving portions. In her conversation with Taylor, Lewis admitted that she stabbed Lester and that she lied to the investigating officer, both of which could have subjected her to potential criminal charges. However, Lewis's statement that she stabbed Lester to make him stop choking her was self-serving.

We hold that the trial court admitted Lewis's statement on untenable grounds because it did not follow *Roberts*. The trial court should have admitted only the portion of Lewis's statement that inculpated her for committing a crime, her admission that she stabbed Lester, and excluded the self-serving portion, that she stabbed Lester because he was choking her. The trial court abused its discretion by admitting all of Lewis's statement to Taylor.

C. Harmless Error

Although the trial court erred in admitting Lewis's entire statement to Taylor, the error was harmless. Erroneous admission of evidence is reviewed for non-constitutional harmless error. *State v. Gunderson*, ___ Wn.2d ___, 337 P.3d 1090, 1095 (2014). An error is harmless if, within reasonable probabilities, it did not materially affect the trial outcome had the error not occurred. *Gunderson*, 337 P.3d at 1095.

Here, Lewis's statement was not, as Lester argues, "in large measure the whole of the State's argument" against his self-defense claim. Br. of Appellant at 13. The record contains an abundance of testimony that the jury could have used to convict Lester. Lester admits that only he and the victim were present when she was stabbed. Not long after Lester and Lewis walked

8

outside, both Barnes and Taylor heard Lewis scream "He's killing me!". 5 VRP at 199, 253. Neither Barnes nor Taylor saw Lewis walk outside with a knife.

After Lester stabbed Lewis, Lester told a neighbor that he was "doing to her what she was doing to me." 5 VRP at 275-76. But Lester appeared calm and not panicked while he spoke to the neighbor and situated his daughter in the backseat of his car. Lester acknowledged that the clothing he wore at the time of the stabbing did not have any stains or blood on them and he did not have scratches, stab wounds, or incisions on his body. Lester stabbed Lewis seven times. Two of those injuries could have been fatal by themselves, and two of Lewis's injuries could have been sustained by defending herself.

Lester never requested an instruction to limit the State's use of Lewis's statement to Taylor and during his closing argument, Lester used the fact that Lewis stabbed him to support his claim that he acted in self-defense. Even if the trial court erred in admitting the self-serving portion of Lewis's statement to Taylor, we conclude that there is not a reasonable probability that the outcome of the trial would have been different.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

Lester argues that his counsel was ineffective for failing to propose a jury instruction that placed the burden of proof on the State to disprove Lester's diminished capacity defense. The State argues that Lester's counsel was not deficient because Lester's suggested instruction would have been contrary to existing law. We agree with the State.

The Sixth Amendment and the Washington Constitution guarantee a criminal defendant the right to effective representation. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The

defendant bears the burden on appeal to prove both prongs of the *Strickland* test[9]: (1) Counsel's representation fell below an objective standard of reasonableness and was thus deficient; and (2) but-for counsel's deficient performance, the result of the proceeding would have been different. *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). A reviewing court is "highly deferential" when considering counsel's performance. *Humphries*, 181 Wn.2d at 720. We review the reasonableness of counsel's performance by considering all the circumstances surrounding counsel's trial decisions. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014).

The jury instruction on diminished capacity proposed by Lester's counsel cited WPIC 18.20 and copied it verbatim. We upheld a jury instruction identical to WPIC 18.20 in *State v. Marchi*, 158 Wn. App. 823, 834, 836, 243 P.3d 556 (2010), *review denied*, 171 Wn.2d 1020 (2011). We have twice rejected the argument that the State should bear the burden of disproving a defendant's diminished capacity defense. *State v. James*, 47 Wn. App. 605, 608, 736 P.2d 700 (1987) (the trial court was not required to instruct the jury that the State had the burden of disproving diminished capacity caused by intoxication); *State v. Sao*, 156 Wn. App. 67, 76-77, 230 P.3d 277 (2010), *review denied*, 170 Wn.2d 1017 (2011) (intoxication or diminished capacity does not add an additional element to the charged offense, which the State must disprove at trial).[10] If Lester's counsel had proposed a jury instruction that required the State to disprove his diminished capacity defense, such a request would have been futile as contrary to controlling case law. Lester's counsel was not deficient for not offering such an instruction.

---

[9] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] Lester implicitly urges us to change the law by arguing that these holdings are incorrect. We do not address this argument because Lester does not challenge the jury instruction for error directly and instead raises the argument indirectly in the context of ineffective assistance of counsel.

CONCLUSION

The trial court did not violate Lester's Sixth Amendment right. Though the trial court improperly admitted Lewis's entire statement to Taylor without excluding the self-serving portion of that statement, the error was harmless. Lester did not receive ineffective assistance of counsel. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Johanson, C.J.

Maxa, J.