[No. 19878-9-II. Division Two. May 1, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS G. CLARK, *Appellant*.

70

*John Henry Browne* of *Browne & Ressler*; and *Rita J. Griffith*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Matthew L. Clucas* and *Pamela B. Loginsky, Deputies*, for respondent.

HUNT, J. — Thomas Clark appeals his conviction for three counts of child molestation in the first degree under RCW 9A.44.083. His seven-year-old stepdaughter, E., told a school interventionist and an investigator that Clark had sexually molested her in their home. Clark initially denied the allegations, but later admitted that although the incidents had occurred, E. had instigated them. At trial, E. recanted, testifying that her earlier inculpatory statements had been lies. Clark did not object to the State's introduction of E.'s out-of-court statements to an investigator describing her version of the molestation. The State did not introduce E.'s prior inconsistent sworn testimony from the child hearsay pretrial hearing.

On appeal Clark argues the trial court erred by: (1) allowing E.'s unsworn hearsay statements into evidence because E. was effectively unavailable for cross-examination; (2) failing to declare a mistrial after a child investigator testified about child victim behavior and after Clark's mother commented about a polygraph exam; and (3) failing

to give a unanimity instruction as to the underlying act for each count. We affirm.

## FACTS
### A. Crimes

Thomas Clark married E.'s mother, who was pregnant with E. by another man. E. was born on June 30, 1987, and believed Clark to be her biological father. In 1995 problems arose between Clark and E.'s mother, and on March 7, 1995, Clark moved out.

On March 17, 1995, E. approached her schoolteacher, Richard Sackville-West, and told him she was sad. Sackville-West referred E. to the school's interventionist, Janet Garmann.

On March 29, 1995, E. again approached Sackville-West, and told him Clark might have to go to jail because of something he did to her. E. did not elaborate. Sackville-West again referred E. to Garmann.

At the first interview with the interventionist on March 17, 1995, E. told Garmann only that she was sad about Clark's moving out. At the second interview on March 29, 1995, E. told Garmann that Clark had made E. touch and rub his penis three or four times before Christmas. Garmann called Child Protective Services (CPS) to report E.'s allegations.

On April 10, 1995, Kitsap County Prosecutor Child Advocacy Center interviewer Cynthia Conrad talked with E. E. told Conrad that E.'s father had called her into their basement, where he lay naked on his bed, and made her "rub up and down on [his] penis" for "[s]ix minutes." E. said she told Clark, "I don't want to," but that Clark had said she did not have a choice. E. described to Conrad that Clark's penis was "[s]limy, gross, bumpy, disgusting," and "hard." When E. was asked to describe how Clark wanted her to move her hand, Conrad testified E. "put her hand like this, with her thumb and her four fingers in kind of a circle, and she moved her hand up and down like this (dem-

onstrating)." E. also described the moaning sounds that Clark made and the "green stuff" that came out of his penis, which "Daddy wiped . . . off on the bed." E. said these masturbation incidents happened about six times. Clark warned her he would go to jail if she told anyone. E. told Conrad, "Daddy said it must be a nightmare, but it isn't, it's really true."

Clark came in voluntarily to talk to several investigators at the Kitsap County Sheriff's Office; Clark was not under arrest and was free to leave. Clark solicited and took a polygraph test on April 25, 1995. He told Deputy Richard Smith that he had come in to tell his side of the story. Smith told Clark that the test showed deceptive responses and he did not believe Clark was telling the truth. But Clark continued to deny any improper sexual conduct between him and E. Smith explained to Clark that E.'s detailed statement made it appear that Clark was not telling the truth; Smith encouraged Clark to tell the truth and to get help if needed.

Then, according to Smith, Clark's "whole demeanor changed and it was basically that it appeared he wanted to communicate in earnest. . . ." Clark then admitted that E. did masturbate him three times before Christmas of 1994, once in his bed and twice on the couch upstairs. Clark claimed E. had initiated each incident. He told investigators that each time he awoke to find E. rubbing his penis. Clark claimed that during the first and second incidents, he told E. that this was "not something that daughters do to daddies" and that he could go to jail. But Clark said that he allowed the third incident to continue because it "felt good." Smith testified he believed this subject was clearly difficult for Clark to talk about, but Clark tearfully explained that "he was glad to finally tell . . . what had happened, that this was kind of his breaking point, and he was basically afraid to bring it out before."

Clark then asked to see Detective Ronald Trogdon, with whom he had spoken before; Clark apparently wanted to tell Trogdon what he had told Smith. As he concluded his

interview with Trogdon, Clark commented that he knew it was wrong, but "I was too stupid to stop it." After the interviews, Clark was placed under arrest.

## B. Procedure

### 1. Pretrial

The trial court conducted two pretrial hearings: (1) a CrR 3.5 hearing on the admissibility of Clark's partial confession, and (2) a child hearsay hearing on the admissibility of E.'s out-of-court statements to Conrad, Sackville-West, and Garmann. Clark acknowledged that his statements to Trogdon were "out of custody" and "completely admissible."

#### a. *CrR 3.5 Hearing*

At the continued CrR 3.5 hearing on July 12, 1995, Deputy Smith testified that Clark had requested and voluntarily taken a polygraph test on April 25, after which Smith told Clark that he did not believe Clark was telling the truth and that the test showed deceptive responses. Clark testified that he had answered the polygraph questions truthfully, that he had believed they would prove his innocence. He further stated that he had not been sleeping well, because he had not been taking his anti-anxiety medicine, such that his memory of the incidents with E. and his statements to the police were fragmented and blurred. The court found Clark's postpolygraph statements to have been voluntarily made and ruled them admissible.

#### b. *Child Hearsay Hearing*

At the child hearsay hearing on June 21, 1995, E. testified that she had seen her daddy's privates and that "more than once" he had asked her to rub it, while soft, with her fingers and thumb forming a circle. She made careful distinctions: Clark had not *forced* her but rather had *asked* her to touch him; he had not touched *her* privates, but had asked her only to touch *his*. At the hearing, E. could not recall anything coming out of Clark's penis, but she did recall having told that to Garmann. Clark was present, and his attorney cross-examined E.

The trial court reviewed the circumstances surrounding the giving of each statement, determined they were sufficiently reliable, and ruled them admissible. The parties stipulated to the admissibility of E.'s statements to Sackville-West. All believed that E. would testify at trial about the incidents of molestation.

2. Trial

The State called Conrad, who began to tell the jury that child victims of sexual abuse often do not tell the entire story at first and often take back allegations of abuse after they tell. Clark objected. The trial court sustained the objection, struck the testimony, and instructed the jury to disregard it. Conrad testified further about E.'s statements to her. Garmann and Sackville-West also testified about E.'s statements to them.[1]

Before Conrad testified, there was some indication that E. had recanted. When called to the witness stand after Conrad's testimony, E. testified that, although she had seen Clark's penis once, she had lied in making her previous statements that Clark had made her touch his penis and that something had come out of it. Clark cross-examined her about whether she was telling the truth at trial. E. said she had been mad at Clark for leaving them without a phone and a car, and she had wanted to get him in trouble. She said that she was very sad that Clark was not living at home and that if the whole thing just went away, she thought Clark would get to come home and everybody would be happy again.

Later in the trial, Clark's mother inadvertently testified that Clark had offered to take a polygraph test to prove his innocence. The State objected, arguing that the door was now open to admit the results of the test. Clark urged the court to strike the comment and to instruct the jury to disregard, which the court did.

In closing, the State argued that there was evidence of

---

[1]Clark did not move to strike the testimonies of Conrad and Garmann relating E.'s out-of-court statements.

three incidents of molestation between June 1994 and March 1995. Although E. had noted between three and six incidents, the State did not elect the particular acts upon which the jury should base its conviction. But the trial court instructed the jury that in order to convict, it must be unanimous about Clark's guilt for each count and that the act for one count could not be the same as the act for any other count.

The jury convicted Clark on all three counts of child molestation.

## ANALYSIS
### A. Admissibility of Child Victim's Hearsay Statements

#### 1. Issue raised for first time on appeal

██ ██ Clark contends that E.'s statements to Conrad should not have been admitted because E. did not "testify" as required by the child hearsay statute, RCW 9A.44.120.[2] However, he did not object at trial, and did not request the court to strike Conrad's testimony or request a limiting instruction. As we discuss below, E.'s recantation does not violate Clark's federal confrontation clause rights. Because a constitutional right is not implicated, we do not address

---

[2]The child hearsay admissibility statute, RCW 9A.44.120, provides:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

the merits of this issue for the first time on appeal. *See Brower v. Ackerley*, 88 Wn. App. 87, 943 P.2d 1141 (1997).

## 2. Confrontation Clause

 The Sixth Amendment provides that a defendant shall enjoy the right to confront witnesses against him. *United States v. Owens*, 484 U.S. 554, 557, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988). Its meaning is controlled by federal law. The confrontation clause applies when assertive conduct is offered against a criminal defendant to prove the truth of the matter asserted. *Tennessee v. Street*, 471 U.S. 409, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985). The clause can be satisfied by: (1) the prosecution calling and questioning a witness about the charged incident, and (2) the witness being subject to cross-examination. *Owens*, 484 U.S. at 558-60. Cross-examination is constitutionally adequate even if the witness cannot remember the incident at trial, *id.*, or even though the witness denies the incident at trial. *California v. Green*, 399 U.S. 149, 164, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

Here, when the State called E. as a witness at trial and asked her to describe the charged incidents, she testified that they did not happen. Thus she testified adversely to the State, inconsistently with her earlier interviews with Garmann and Conrad, and without describing the sexual acts she had alleged in her hearsay statements. Nonetheless, Clark had an adequate opportunity to cross-examine, according to the federal confrontation clause as construed in *Owens* and *Green*. Clark's rights under the federal confrontation clause were thus satisfied.

## 3. *State v. Rohrich* Distinguished

A recent case, *State v. Rohrich*, 132 Wn.2d 472, 939 P.2d 697 (1997), interpreted RCW 9A.44.120 and its relation to the federal confrontation clause.[3] There, the State called the victim to testify and asked only innocuous questions,

---

[3]Article I, section 22 of the Washington Constitution provides that an accused shall have the right to meet the witnesses against him or her face to face. It is coextensive with the Sixth Amendment's confrontation clause. *State v. Florczak*,

unrelated to the charged crimes. The court held that the State's failure to call a witness on the subject of the charged crime or to question the victim about the charged incident denied the defendant his right to confront that witness. The *Rohrich* court did not reach the issue of whether cross-examination was adequate, because there was neither direct examination nor cross-examination about the charged crime.

But the *Rohrich* court said: "The Confrontation Clause requires the term 'testifies' as used in the child hearsay statute, RCW 9A.44.120(2)(a), to mean the child gives live, in-court testimony *describing the acts* of sexual contact to be offered as hearsay"; and "[w]e conclude, 'testifies,' as used in RCW 9A.44.120(2)(a), means the child takes the stand and describes the acts of sexual contact alleged in the hearsay." *Rohrich*, 132 Wn.2d at 481, 482 (emphasis added). Because the U.S. Supreme Court has ruled to the contrary on this aspect of the federal confrontation clause, this language, however, must have been intended as statutory construction of RCW 9A.44.120(2)(a).[4] The U.S. Supreme Court, the final arbiter of the meaning of the Sixth Amendment, has squarely ruled that the confrontation clause does *not* require a witness to take the stand and describe the charged crime. *Owens*, 484 U.S. at 558-60; *Green*, 399 U.S. at 164.

█ There being no federal or state constitutional issue before us, but rather an issue of statutory construction, Clark's failure to object at trial precludes his raising the child hearsay issues for the first time on appeal. Accordingly, we affirm on this issue.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

---

76 Wn. App. 55, 71, 882 P.2d 199 (1994). Because the *Rohrich* court did not engage in a *Gunwall* analysis, we assume the court did not by its holding intend to expand Washington's confrontation clause beyond the protections provided by the Sixth Amendment. *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

[4]See the court's references to legislative intent in *Rohrich*, 132 Wn.2d at 481 n.16.

78

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and SEINFELD, JJ., concur.

Review granted at 136 Wn.2d 1019 (1998).