[No. 31879-2-II. Division Two. March 7, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDRE ROACH HOPKINS, *Appellant*.

444

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Gerald A. Horne, Prosecuting Attorney,* and *Michelle Hyer, Deputy,* for respondent.

¶1 HUNT, J. — Andre Hopkins appeals his jury conviction and exceptional minimum sentence for first degree rape of a child and his jury conviction for first degree child molestation. He argues that (1) the State and the trial court failed to meet the statutory prerequisites for finding the child victim unavailable to testify for purposes of the child hearsay statute, RCW 9A.44.120; (2) the child victim's hearsay statements were testimonial and, thus, violated his Sixth Amendment confrontation rights;[1] and (3) his excep-

---

[1] U.S. CONST. amend VI; *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

tional minimum sentence under RCW 9.94A.712 violated *Blakely*[2] because a jury did not decide the underlying aggravating factors. In his statement of additional grounds,[3] Hopkins asserts illegal witness tampering, malicious prosecution, incorrect offender score calculation, and ineffective assistance of counsel.

¶2 Holding that RCW 9A.44.120 required the trial court to conduct a competency hearing before finding the child unavailable to testify for child-hearsay statutory purposes, we reverse and remand.

## FACTS

¶3 A jury convicted Andre Hopkins of raping and molesting his girl friend's two-and-one-half-year-old daughter, M.H. Because of M.H.'s young age at the time of the incident and because she was three-and-one-half years old at the time of Hopkins' trial, the State chose not to call her as a witness.

## I. PRETRIAL

¶4 Rather than call M.H., the State proposed to call Samantha Hannah (M.H.'s mother), Janet Blake (Hannah's mother), and Patricia Mahaulu-Stephens, a Child Protective Services (CPS) social worker, to testify about M.H.'s hearsay disclosures to them concerning her allegations against Hopkins. The trial court held a child hearsay hearing to determine whether M.H.'s hearsay statements were admissible under the child hearsay statute.[4] During the child hearsay hearing, the trial court heard testimony from the State's three adult witnesses. But it did not interview M.H., and Hopkins' counsel did not object to the trial court's failure to interview the child.

---

[2] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[3] RAP 10.10.

[4] RCW 9A.44.120.

¶5 Nor did the trial court conduct a child competency hearing under RCW 9A.44.120. Instead, the State and defense counsel agreed that M.H. was incompetent to testify based on "her young age." The trial court made no express findings about whether M.H. was incompetent and, therefore, unavailable to testify for purposes of RCW 9A.44.120.

¶6 Nonetheless, the trial court ruled that M.H.'s hearsay statements to the State's three adult witnesses were admissible based on *State v. C.J.*, 148 Wn.2d 672, 63 P.3d 765 (2003), and *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984), because her statements bore evidence of reliability and there was sufficient corroborating evidence under RCW 9A.44.120.

## II. TRIAL

¶7 At trial, the State called Hannah, Blake, and Mahaulu-Stephens to relate M.H.'s disclosures to them about Hopkins' sexual contact with her. The State also called the emergency room physician and the sexual-assault-clinic nurse practitioner who had examined M.H. following her disclosures, neither of whom conclusively found that M.H. had been sexually molested, based on their respective physical examinations of her.[5]

¶8 M.H. did not testify at trial. Thus, she was not subject to cross-examination by Hopkins.

¶9 Hopkins called his friend, Julie Roth, who testified that (1) she had seen M.H. and her infant sister immediately before Hopkins had returned them to their mother, after spending two days with Hopkins, during which the alleged sexual contact had occurred and (2) she had noted nothing strange in their behavior. Hopkins also took the stand in his own defense and denied ever having touched M.H. in an inappropriate manner.

---

[5] The emergency room physician's report stated that the genital area was "not normal." The nurse practitioner found "no evidence of sexual abuse at this time in this child."

¶10 The jury convicted Hopkins on both counts. Hopkins moved for a new trial based on a new Supreme Court decision, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The trial court denied Hopkins' motion, reasoning that the child hearsay statements were not "testimonial" in nature and, thus, *Crawford* did not apply.

## III. Sentencing

¶11 At sentencing, the trial court calculated Hopkins' offender score as 6, based on a prior juvenile child-rape adjudication. For count I, first degree rape of a child, the trial court sentenced Hopkins to life imprisonment and set an exceptional minimum sentence of 260 months under RCW 9.94A.712. The trial court based this exceptional minimum sentence on Hopkins' denial of his guilt for the child rape to which he had pleaded guilty as a juvenile and the vulnerable age of the victim. For count II, first degree child molestation, the trial court sentenced Hopkins to 130 months confinement, a standard range sentence.

¶12 Hopkins moved for reconsideration of his exceptional minimum sentence, citing another new Supreme Court case, *Blakely*, 542 U.S. 296. The trial court denied the motion and entered written findings of fact and conclusions of law supporting the exceptional minimum sentence based on the victim's age and Hopkins' abuse of his position of trust.

¶13 Hopkins appeals both convictions and his exceptional minimum sentence on count I.

## ANALYSIS

### I. Child Hearsay Statements

¶14 Hopkins argues that the trial court improperly admitted M.H.'s statements under the child hearsay statute based on both constitutional and statutory grounds. Finding dispositive the trial court's failure to conduct a manda-

tory competency hearing for M.H. before admitting her hearsay statements at trial, we address the statutory ground first.

## A. RCW 9A.44.120—Competency Hearing Requirement

■■ ¶15 Hopkins argues that the trial court improperly admitted M.H.'s statements under the child hearsay statute, RCW 9A.44.120, because (1) the trial court failed to conduct the statutorily required competency hearing[6] and (2) the State failed to show that she was unavailable to testify with the meaning of the statute. We agree.

¶16 RCW 9A.44.120 provides, in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, . . . not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . in the courts of the state of Washington if:

(1) *The court finds, in a hearing* conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient *indicia of reliability*; *and*

(2) *The child either:*

(a) *Testifies at the proceedings*; *or*

(b) *Is unavailable as a witness*: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

(Emphasis added.)

¶17 It is uncontroverted that (1) M.H. was under the age of 10; (2) but for this statutory exception, her hearsay statements to the State's adult witnesses were not other-

---

[6] Hopkins not only failed to challenge M.H.'s competency below, but also agreed that she was incompetent to testify because of her young age. Nonetheless, he can raise this issue for the first time on appeal because a finding of witness unavailability is constitutionally mandated. *See State v. Swan*, 114 Wn.2d 613, 646, 790 P.2d 610 (1990).

wise admissible;[7] and (3) M.H. did not testify at Hopkins' trial, RCW 9A.44.120(2)(a). Therefore, we focus on whether the trial court conducted a hearing under RCW 9A.44-.120(1) and found that M.H. was "unavailable as a witness" under RCW 9A.44.120(2)(b).

¶18 A child may be "unavailable as a witness" under RCW 9A.44.120(2)(b) if she is incompetent to testify. RCW 5.60.050 governs witness competency. A witness is incompetent to testify if she is (1) of unsound mind or intoxicated at the time of her production for examination or (2) "incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly."[8] Arguably, the plain language of RCW 9A.44.120(1) can be read to limit the hearing requirement to the trial court's inquiry and determination of whether the child's hearsay statements have "sufficient indicia of reliability."

¶19 But in *Ryan*, our Supreme Court expressly ruled that the RCW 9A.44.120 hearing requirement also applies to RCW 9A.44.120(2). The court held that: (1) "[s]tipulated incompetency based on an erroneous understanding of statutory incompetency is too uncertain a basis to find unavailability"[9] and (2) the trial court must determine a child's competency within the framework of RCW 5.60.050

---

[7] *See* ER 801, 802, 803, and 804. *See also* ER 807 [Reserved], which references RCW 9A.44.120's special hearsay exception for statements by children describing sexual contact.

[8] A trial court can find a child competent if the child understands an obligation to testify truthfully and possesses (1) the mental capacity accurately to perceive events at the time of occurrence, (2) sufficient memory to retain the events in question, (3) the ability to express orally her memory of the event, and (4) the capacity to understand and to answer simple questions about the event. *C.J.*, 148 Wn.2d at 682.

[9] In reversing Ryan's conviction, the court held that the trial court erred in allowing the child victims' mothers to testify about their children's out-of-court statements, even though the parties had stipulated that the five-year-old children were incompetent and, therefore, "unavailable" to testify at trial. *Ryan*, 103 Wn.2d at 167.

by conducting a competency hearing to examine the child's manner, intelligence, and memory.[10] 103 Wn.2d at 172.

¶20 The record before us does not reflect that the trial court here conducted a hearing to determine whether M.H. was incompetent as a witness on any ground.[11] On the contrary, it appears that the trial court neither interviewed nor evaluated this child victim. Here, as in *Ryan*, the trial court (1) erroneously relied on the parties' agreement, and apparently its own nonhearing assessment, that M.H. was too young to testify;[12] (2) based on this assumption, erroneously presumed that she was unavailable to testify; and (3) erroneously allowed her hearsay statements into evidence, ostensibly under the child hearsay statute.

¶21 Neither our legislature nor our state courts have set an age below which a child is presumed incompetent to testify and a competency hearing is superfluous.[13] *See Ryan*, 103 Wn.2d at 171-72;[14] *see also State v. Shafer*, 156 Wn.2d 381, 385, 128 P.3d 87 (2006) (competency hearing for

---

[10] *Ryan*, 103 Wn.2d at 172 (citing *Laudermilk v. Carpenter*, 78 Wn.2d 92, 457 P.2d 1004, 469 P.2d 547 (1969)).

[11] Although the trial court made findings about the reliability of M.H.'s statements and the presence of corroborating evidence, these findings do not satisfy the separate statutory requirement that it specifically conduct a competency hearing and make findings about M.H.'s competency, or incompetency, as a witness, independent of the parties' agreement that the child was incompetent because of her young age. *See Ryan*, 103 Wn.2d at 172.

[12] The trial court noted, "[T]his is a classic case where we have a victim who is under the age of four." Report of Proceedings at 179-80. Although the trial court's conclusion may appear reasonable under the circumstances here, such conclusion does not satisfy the legislatively-prescribed prerequisites for the admissibility of child hearsay under RCW 9A.44.120. Furthermore, not even the possibility of the trial court's reaching this same conclusion after it conducts the statutorily required competency hearing on remand obviates the statutory necessity for conducting the hearing.

[13] Although we can foresee a situation in which a very young child may be presumed incompetent, for example, a nonverbal infant, such is not the case here.

[14] *Ryan* appears to preclude any assumptions about statutory incompetency for any age. 103 Wn.2d at 172 ("The unexplained failure of the State to produce the children exemplifies the fears of one commentator that RCW 9A.44.120 may serve as a disincentive to call the child witness.").

a three-year-old).[15] On the contrary, our legislature has clearly established prerequisites for allowing child hearsay in a criminal trial at which the child does not testify herself. A primary prerequisite is that the trial court must conduct a hearing and find that a child witness is unavailable to testify. RCW 9A.44.120(1), (2)(b). Absent compliance with the strict requirements of RCW 9A.44.120 or falling within some exception to the rules of evidence generally excluding hearsay, a child hearsay statement is simply inadmissible as a matter of law when the child does not testify at trial.

¶22 Finding *Ryan* controlling, we hold that (1) the trial court erred in presuming M.H.'s incompetency from her age, in spite of the parties' apparent agreement; (2) the trial court erred in failing to conduct a competency hearing and to enter the statutorily required findings before finding M.H. "unavailable" to testify at trial; (3) therefore, M.H.'s hearsay allegations of Hopkins' sexual contact were not admissible under RCW 9A.44.120; and (4) because M.H.'s hearsay statements were not otherwise admissible, the trial court improperly allowed them into evidence.

### B. Harmless Error

¶23 The State argues that even if the trial court's failure to conduct a competency hearing was error under *Ryan*, the error was harmless because there was "overwhelming evidence" that M.H. was incompetent. We disagree.

■ ■ ¶24 When a party fails to produce a witness, the Sixth Amendment[16] demands proof of that witness's unavailability. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). A constitutional error is

---

[15] Moreover, Washington courts have found no abuse of discretion when trial judges found children close in age to M.H. competent to testify. *See, e.g., State v. Carlson*, 61 Wn. App. 865, 874, 812 P.2d 536 (1991) (finding no abuse of discretion when trial court found three-and-one-half year old sexual abuse victim competent to testify), *review denied*, 120 Wn.2d 1022 (1993); *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (no abuse of discretion in finding four-year-old competent to testify), *review denied*, 114 Wn.2d 1026 (1990).

[16] U.S. CONST. amend VI.

harmless only if the court is "convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error." *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). The State bears the burden of showing that a constitutional error was harmless. *Id*. Such is not the case here.

¶25 We are not convinced beyond a reasonable doubt that, without M.H.'s hearsay statements, a reasonable jury would have convicted Hopkins. The State produced no conclusive physical evidence that M.H. was sexually assaulted by anyone. Without M.H.'s hearsay statements, the State could not prove a sexual assault or, if proved, that Hopkins was the perpetrator.

¶26 Accordingly, we reject the State's harmless error argument, reverse Hopkins' convictions, and remand to the trial court to conduct a child witness competency hearing for M.H.

### C. Sixth Amendment—*Crawford*

¶27 Hopkins further argues that the trial court's admission of M.H.'s hearsay statements through witnesses Hannah, Blake, and Mahaulu-Stephens violated his constitutional protections under the Sixth Amendment. Because this issue may reoccur following remand, we address it here. Whether these statements violated Hopkins' Sixth Amendment rights is a question of law, which we review de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

¶28 We note at the outset that if on remand the trial court finds M.H. competent to testify at Hopkins' retrial, the *Crawford* issue would be moot. Hopkins would have an opportunity to cross-examine her at trial. Even if M.H. cannot recall and relate her previous allegations of Hopkins' sexual assault when she was two-and-a-half years old, her being called as a witness at trial, subject to questioning about the event, would satisfy both the Sixth Amendment and subsection (2)(a) of RCW 9A.44.120. *See*

*State v. Clark*, 91 Wn. App. 69, 76, 954 P.2d 956 (1998). Therefore, because the trial court already found M.H.'s hearsay statements to bear sufficient "indicia of reliability" under RCW 9A.44.120(1), M.H.'s hearsay statements to the three adult witnesses would satisfy the prerequisites for admissibility under the child hearsay statute.

¶29 If, however, on remand the trial court finds M.H. incompetent to testify, then the *Crawford* Sixth Amendment issues become relevant. Accordingly, we address them here. We divide M.H.'s hearsay statements into two general categories—statements to family members and statements to nonfamily members.

### 1. M.H.'s Hearsay Statements to Family Members

¶30 We first address M.H.'s statements to her mother, Hannah, and to her grandmother, Blake. A child's hearsay statements made to family members are nontestimonial and, thus, do not violate a criminal defendant's Sixth Amendment rights. *See Shafer*, 156 Wn.2d at 389-90; *Crawford*, 541 U.S. at 51.

¶31 In *Shafer*, a three-year-old child told her mother that her uncle had " 'touched her privates' " and had told her to kiss his privates. 156 Wn.2d at 383-84 (quoting Verbatim Report of Proceedings (May 5, 2004) at 312). The child had no previous exposure to sexually explicit material. The trial court denied Shafer's motion to exclude the child's out-of-court statements to a family friend[17] based the United States Supreme Court's *Crawford* decision. 156 Wn.2d at 384-85. Our Supreme Court rejected Shafer's contention that the child's statements to her mother were testimonial because the child had relayed events to a family member and the mother had not solicited the statements from her child. 156 Wn.2d at 389-90. Our court (1) relied on *Crawford*'s notion that an "accuser who makes a formal statement to government officers bears testimony in a sense

---

[17] The family friend previously worked as a law enforcement informer, but when she interviewed the child she was not acting in any official capacity.

that a person who makes a casual remark to an acquaintance does not," *Crawford*, 541 U.S. at 51, and (2) reasoned that a victim's statements to friends and family are generally nontestimonial statements because there is no "contemplation of bearing formal witness against the accused." *Shafer*, 156 Wn.2d at 389.[18]

¶32 With respect to M.H.'s hearsay statements to her mother and to her grandmother, our Supreme Court's analysis in *Shafer* is directly on point. Like the child in *Shafer*, M.H. made disclosures to her family members, who were concerned for her physical safety. Hannah and Blake sought answers to their questions precipitated by M.H.'s disclosures, not in contemplation of prosecuting a criminal case against Hopkins, but rather to assess M.H.'s physical well-being and her future safety. Moreover, neither Hannah nor Blake asked leading questions; nor did they engage in a structured interrogation of M.H.

¶33 Just as our Supreme Court relied on these factors in holding a child's statements to be nontestimonial in *Shafer*, 156 Wn.2d at 390, we similarly hold here that Hannah's and Blake's testimonies about M.H.'s disclosures to them did not violate Hopkins' Sixth Amendment right to confront the witness against him.

### 2. M.H.'s Hearsay Statements to Child Protective Services

¶34 We next decide whether nonfamily member Mahaulu-Stephens' testimony relating M.H.'s hearsay disclosures violated Hopkins' Sixth Amendment protections. This issue represents an unsettled area of law.[19] Mahaulu-

---

[18] *See also Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2276-77, 165 L. Ed. 2d 224 (2006) (holding a 911 call to be nontestimonial when the primary reason for the call is to resolve a present emergency rather than to investigate past facts); *State v. Williams*, 136 Wn. App. 486, 498, 150 P.3d 111 (2007).

[19] Scholars have made persuasive policy arguments on both sides of the debate. On the one hand, a broad definition of "testimonial evidence" will provide a windfall to domestic violence perpetrators because their victims are more likely to be unavailable. On the other hand, a narrow definition of "testimonial evidence"

Stephens is a government officer, not a member of M.H.'s family. Nonetheless, her initial role was to ensure M.H.'s safety rather than to investigate Hopkins for his alleged sexual abuse of her.

¶35 In *Shafer*, our Washington Supreme Court faced a similar issue when a child made statements to a family friend who also worked for law enforcement. 156 Wn.2d at 390. Significantly, the court noted,

> Of the testimonial statements identified as such in *Crawford*, the common thread binding them together was *some degree of involvement by a government official*, whether that person was acting as a police officer, as a justice of the peace, or as an instrument of the court.

156 Wn.2d at 389 (emphasis added). Reasoning that the witness was not acting in her official capacity when the child victim made her disclosures, the court held that the witness's statements were admissible under the child hearsay statute. *Shafer*, 156 Wn.2d at 390-91.[20]

---

will provide an incentive for prosecutors not to interview or to produce witnesses, which will, in turn, jeopardize a defendant's Sixth Amendment rights. *Compare* Carol A. Chase, *Is* Crawford *a "Get out of Jail Free" Card for Batterers and Abusers? An Argument for a Narrow Definition of "Testimonial*," 84 OR. L. REV. 1093, 1095-96 (2005) *with* Robert P. Mosteller, *Exploring the Future of the Confrontation Clause in Light of Its Past:* Crawford's *Impact on Hearsay Statements in Domestic Violence and Child Sexual Abuse Cases*, 71 BROOK. L. REV. 411, 425 (2005).

[20] *But see* other jurisdictions' holdings that children's statements to social workers investigating abuse are testimonial: *Snowden v. State*, 156 Md. App. 139, 846 A.2d 36, 47 (2004) (holding that *Crawford* prevented a state social worker from testifying about a child's statements when the social worker was assigned to investigate allegations of abuse and to speak for the child in court); *State v. Mack*, 337 Or. 586, 101 P.3d 349, 352-53 (2004) (Caseworker who interviewed a child so that police officers could videotape the child's statement for use in a criminal proceeding was "serving as a proxy for the police."); *T.P. v. State*, 911 So. 2d 1117, 1123 (Ala. Crim. App. 2004) (Because the child's statements resulted from social worker's interview and police investigators as part of a criminal investigation, the interview was similar to a police interrogation.); *State v. Blue*, 2006 ND 134, 717 N.W.2d 558, 564-67 (statements to a forensic interviewer were testimonial when he conducted a videotaped interview while a police officer watched from a different room because the interviewer acted in concert with or as an agent of the government); *In re Rolandis G.*, 352 Ill. App. 3d 776, 817 N.E.2d 183, 188, 288 Ill. Dec. 58 (2004) (statements to a child advocacy worker were testimonial when they came in response to formal questioning, with a police officer watching through a two-way mirror.); *In re T.T.*, 351 Ill. App. 3d 976, 815 N.E.2d 789, 801-03, 287 Ill.

¶36 Here, Mahaulu-Stephens' capacity appears to fall in between the lines drawn in *Shafer* and in other jurisdictions. Mahaulu-Stephens was a government-employed social worker. But she was not working at the behest of law enforcement when she first interviewed M.H. On the contrary, several examples show that she was working on behalf of M.H.'s welfare. First, the trial court's undisputed findings of fact state that Mahaulu-Stephens, at least initially, performed a safety check of M.H., unrelated to any potential criminal prosecution of Hopkins. Second, Mahaulu-Stephens testified that she performed the safety assessment in order to "ensure that the child is really safe and secure where she's living." Report of Proceedings (RP) at 128. Third, when Mahaulu-Stephens questioned M.H., she asked innocuous, nonleading questions, in response to which M.H. spontaneously reported Hopkins' sexual abuse. These factors tend to show that M.H.'s initial disclosures to Mahaulu-Stephens were primarily "nontestimonial" under *Crawford*. *See State v. Williams*, 136 Wn. App. 486, 490, 150 P.3d 111 (2007).

¶37 But Mahaulu-Stephens visited M.H. a second time for a CPS investigation because of new disclosures. Although the purpose of this visit, too, can be characterized as protecting M.H., it also had the potential to lead to criminal prosecution of Hopkins, which is what actually happened. That Mahaulu-Stephens was also conducting a CPS investigation moves her second meeting with M.H. closer, though not conclusively, on the continuum toward criminal investigation and information that is "testimonial" under *Crawford*.[21]

---

Dec. 145 (2004) (a social worker is an agent of law enforcement when she works at the behest of, and in tandem with, the prosecution with the intent of aiding in the prosecutorial effort).

*But see also State v. Edinger*, 2006-Ohio-1527, 2006 Ohio App. LEXIS 1399, at *47 (statements to a social worker were nontestimonial when (1) she was not a state employee, (2) did not work at behest of government, (3) the purpose of interview was solely for treatment, and (4) the police did not watch the process).

[21] The United States Supreme Court's recent holding in *Davis* does not help us resolve this issue. In *Davis*, the United States Supreme Court examined when a

¶38 The following evidence suggests that M.H.'s statements to Mahaulu-Stephens were testimonial. Mahaulu-Stephens testified that (1) her job was "to investigate whether or not those allegations [of abuse and neglect] are accurate, if there is any truth to the referral," RP at 467; (2) it was her practice to record information gained during the investigation and then to "[a]sk them more questions if there's something they're talking about that's a little more concerning," RP at 473-74; and (3) she records her notes for the explicit purpose of "[d]ocument[ing] that [the victim] made a spontaneous disclose [sic] and be able to give that information to law enforcement." RP at 488.

¶39 We find instructive here the Washington Supreme Court's dicta in *Shafer* that the common thread uniting testimonial statements is "some degree of involvement by a government official, whether that person was acting as a police officer, as a justice of the peace, or as an instrument of the court." 156 Wn.2d at 389. Thus, while Mahaulu-Stephens might not have been working at the behest of law enforcement officers, she was a government employee and her eventual CPS investigatory role overlapped with and aided law enforcement.

¶40 Looking for additional guidance to the 911 call cases, such as *Davis* and *Williams*,[22] we hold that M.H.'s hearsay statements to Mahaulu-Stephens do not meet the *Shafer*

court should consider a 911 call "testimonial" for *Crawford* purposes. 547 U.S. at ___, 126 S. Ct. at 2273-74. Without adopting a bright-line rule, the Court reasoned that a victim's 911 call statement is likely to be nontestimonial in nature when the primary purpose is to obtain assistance to treat an ongoing emergency. *See also* Division One's recent decision in *Williams*, 136 Wn. App. at 498 (past facts collected during a 911 call, including those used to prosecute, are admissible as long as the *primary* purpose of the 911 call was to treat an ongoing emergency). But such statements are likely to be testimonial when there is no ongoing emergency and the rationale for the 911 dispatcher's questioning of the caller is to establish past facts for the potential purpose of prosecution. *Davis*, 547 U.S. at ___, 126 S. Ct. at 2273-74.

Here, M.H.'s disclosures to Mahaulu-Stephens were not made in an emergency context, such as a 911 call. And although her initial primary purpose was to secure M.H.'s safety, there later evolved a secondary, investigatory purpose (during the second meeting), which apparently led to criminal charges against Hopkins.

[22] *See* note 21, *infra. Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2276-77, 165 L. Ed. 2d 224 (2006).

test. First, by the time Mahaulu-Stephens interviewed M.H., there was no ongoing emergency. And even if their first meeting could be characterized as a continued emergency to assure M.H.'s safety from Hopkins, M.H. did not incriminate Hopkins at this first interview; thus, it produced no hearsay statements that the State sought to introduce under the child hearsay statute.

¶41 The second meeting between Mahaulu-Stephens and M.H., however, did produce incriminating statements, which the State used against Hopkins at trial. This second meeting was even more removed from any ongoing emergency than their first meeting. Moreover, at this second meeting, Mahaulu-Stephens was also acting in a government capacity for CPS and, in that capacity, she obtained statements from M.H. that the State used to prosecute Hopkins. *See Shafer*, 156 Wn.2d 381.

¶42 We hold, therefore, that M.H.'s hearsay disclosures to Mahaulu-Stephens during the second interview were "testimonial" under *Crawford* and, therefore, their admission at trial violated Hopkins' Sixth Amendment protections because M.H. did not testify at trial.

## II. EXCEPTIONAL MINIMUM SENTENCE

¶43 Hopkins also argues that the trial court's imposition of an exceptional minimum sentence under RCW 9.94A.712 was unconstitutional because the trial court, not the jury, found the aggravating factors justifying the exceptional minimum sentence,[23] contrary to *Blakely*.

¶44 The Washington Supreme Court's recent decisions in *State v. Clarke*, 156 Wn.2d 880, 887-88, 134 P.3d 188 (2006), and *State v. Borboa*, 157 Wn.2d 108, 117, 135 P.3d 469 (2006), conclusively resolve this issue against Hopkins'

---

[23] The jury convicted Hopkins of first degree child rape and first degree child molestation. The trial court sentenced Hopkins under RCW 9.94A.712 to life in prison, with an exceptional minimum term of 260 months. The trial court based the exceptional minimum term on M.H.'s peculiarly vulnerable age, an aggravating circumstance under RCW 9.94A.535(3), and that Hopkins maintained he was innocent of his previous juvenile sex-offense adjudication.

position. Our Supreme Court held that (1) a criminal defendant serves an indeterminate life sentence for a conviction under RCW 9.94A.712 and (2) judicial fact-finding that increases a defendant's minimum sentence under RCW 9.94A.712 does not violate the Sixth Amendment as interpreted by the United States Supreme Court in *Blakely*. *Clarke*, 156 Wn.2d at 893; *Borboa*, 157 Wn.2d at 117.

¶45 We hold, therefore, as in *Clarke* and *Borboa*, that the trial court's setting an exceptional minimum sentence under RCW 9.94A.712, based on judicial fact-finding of aggravating factors, did not violate Hopkins' Sixth Amendment *Blakely* rights.[24]

¶46 Reversed and remanded.

¶47 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[24] We further note, however, that the trial court's judicial fact finding appears to have violated Hopkins' statutory rights because it based Hopkins' exceptional minimum sentence on a factor that the statute requires a jury, not the court, to determine. RCW 9.94A.535(3)(b).

RCW 9.94A.712(3)(c)(i) refers to RCW 9.94A.535 for setting violent sex offenders' exceptional sentences outside the standard range. In promulgating RCW 9.94A.535 in response to *Blakely* and its progeny, the legislature established one category of mitigating circumstances for the court to consider, RCW 9.94A.535(1), and two categories of aggravating factors—one for the court to determine, RCW 9.94A.535(2), and another for the jury to determine, RCW 9.94A.535(3).

The trial court here based Hopkins' exceptional minimum sentence above the standard range, in part, on a circumstance listed among those a jury must determine, namely, the vulnerability of the victim. RCW 9.94A.535(3)(b). On remand, the trial court can empanel a jury to determine this circumstance if the State and the trial court want to consider the victim's vulnerability as an aggravating factor justifying an exceptional minimum sentence.

The trial court also articulated Hopkins' failure to admit guilt as another aggravating circumstance, one that we do not find listed in RCW 9.94A.535. On remand, however, there may be additional facts elicited that can bring this factor under the circumstances listed in RCW 9.94A.535(3)(o), (q), or some other subsection, if the State and the trial court want to consider this aggravating factor justifying an exceptional minimum sentence.

In short, although under *Clarke* and *Borboa* there are no purely constitutional constraints on the trial court's determination of aggravating factors in setting Hopkins' exceptional minimum sentence, there are statutory constraints, which the trial court can address and remedy on remand.

460

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and VAN DEREN, J., concur.